**Ray WEBSTER, Plaintiff–Appellant,**

v.

**NEW LENOX SCHOOL DISTRICT NO. 122 and Alex M. Martino, individually and as Superintendent of New Lenox School District No. 122, Defendants–Appellees.**

No. 89–2317.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1990.

Decided Nov. 6, 1990.

---

Charles E. Hervas, James G. Sotos, Michael W. Condon, Schirott & Associates, Itaska, Ill., for plaintiff-appellant.

Richard R. Winter, Edward M. Kay, James O. Nolan, Katherine G. Hill, James T. Ferrini, Sonia V. Odarczenko, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., Barry L. Moss, Stuart D. Gordon, Moss & Bloomberg, Bolingbrook, Ill., for defendants-appellees.

Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Ray Webster sought injunctive and declaratory relief based on his claim that the New Lenox School District violated his first and fourteenth amendment rights by prohibiting him from teaching a nonevolutionary theory of creation in the classroom. He appeals the dismissal of his complaint for failure to state a claim. For the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

The district court dismissed Mr. Webster's suit for failure to state a claim upon which relief can be granted. *See* Fed.R. Civ.P. 12(b)(6). The grant of a motion to dismiss is, of course, reviewed *de novo*. *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919, 924 (7th Cir.1990); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989). It is well settled that, when reviewing the grant of a motion to dismiss, we must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff. *Janow-*

*sky v. United States*, 913 F.2d 393, 395–96 (7th Cir.1990); *Rogers v. United States*, 902 F.2d 1268, 1269 (7th Cir.1990).

A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This obligation is especially serious when, as here, we deal with allegations involving the freedom of expression protected by the first amendment. *See Stewart v. District of Columbia Armory Bd.*, 863 F.2d 1013, 1017–18 (D.C.Cir.1988) ("where government action is challenged on first amendment grounds, a court should be especially 'unwilling to decide the legal questions posed by the parties without a more thoroughly developed record of proceedings in which the parties have an opportunity to prove those disputed factual assertions upon which they rely'") (quoting *City of Los Angeles v. Preferred Communications*, 476 U.S. 488, 494, 106 S.Ct. 2034, 2037, 90 L.Ed.2d 480 (1986)). Courts may, however, consider exhibits attached to the complaint as part of the pleadings. *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988). With these constraints in mind, we set forth the pertinent facts.

## A. *Facts*

Ray Webster teaches social studies at the Oster–Oakview Junior High School in New Lenox, Illinois. In the Spring of 1987, a student in Mr. Webster's social studies class complained that Mr. Webster's teaching methods violated principles of separation between church and state. In addition to the student, both the American Civil Liberties Union and the Americans United for the Separation of Church and State objected to Mr. Webster's teaching practices. Mr. Webster denied the allegations. On July 31, 1987, the New Lenox school board (school board), through its superintendent, advised Mr. Webster by letter that he should restrict his classroom instruction to the curriculum and refrain from advocating a particular religious viewpoint.

Believing the superintendent's letter vague, Mr. Webster asked for further clarification in a letter dated September 4, 1987. In this letter, Mr. Webster also set forth his teaching methods and philosophy. Mr. Webster stated that the discussion of religious issues in his class was only for the purpose of developing an open mind in his students. For example, Mr. Webster explained that he taught nonevolutionary theories of creation to rebut a statement in the social studies textbook indicating that the world is over four billion years old. Therefore, his teaching methods in no way violated the doctrine of separation between church and state. Mr. Webster contended that, at most, he encouraged students to explore alternative viewpoints.

The superintendent responded to Mr. Webster's letter on October 13, 1987. The superintendent reiterated that advocacy of a Christian viewpoint was prohibited, although Mr. Webster could discuss objectively the historical relationship between church and state when such discussions were an appropriate part of the curriculum. Mr. Webster was specifically instructed not to teach creation science, because the teaching of this theory had been held by the federal courts to be religious advocacy.[1]

Mr. Webster brought suit, principally arguing that the school board's prohibitions constituted censorship in violation of the first and fourteenth amendments. In particular, Mr. Webster argued that the school board should permit him to teach a nonevolutionary theory of creation in his social studies class.

### B. The District Court

The district court concluded that Mr. Webster did not have a first amendment right to teach creation science in a public school. The district court began by noting that, in deciding whether to grant the school district's motion to dismiss, the court was entitled to consider the letters between the superintendent and Mr. Web-

ster because Mr. Webster had attached these letters to his complaint as exhibits. In particular, the district court determined that the October 13, 1987 letter was critical; this letter clearly indicated exactly what conduct the school district sought to proscribe. Specifically, the October 13 letter directed that Mr. Webster was prohibited from teaching creation science and was admonished not to engage in religious advocacy. Furthermore, the superintendent's letter explicitly stated that Mr. Webster could discuss objectively the historical relationship between church and state.

The district court noted that a school board generally has wide latitude in setting the curriculum, provided the school board remains within the boundaries established by the constitution. Because the establishment clause prohibits the enactment of any law "respecting an establishment of religion," the school board could not enact a curriculum that would inject religion into the public schools. U.S. Const. amend. I. Moreover, the district court determined that the school board had the responsibility to ensure that the establishment clause was not violated.

The district court then framed the issue as whether Mr. Webster had the right to teach creation science. Relying on *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987), the district court determined that teaching creation science would constitute religious advocacy in violation of the first amendment and that the school board correctly prohibited Mr. Webster from teaching such material. The court further noted:

Webster has not been prohibited from teaching any nonevolutionary theories or from teaching anything regarding the historical relationship between church and state. Martino's [the superintendent] letter of October 13, 1987 makes it clear that the religious advocacy of Webster's teaching is prohibited and nothing else. Since no other constraints were

---

**1.** In *Edwards v. Aguillard*, 482 U.S. 578, 592, 107 S.Ct. 2573, 2582, 96 L.Ed.2d 510 (1987), the Supreme Court determined that creation science, as defined in the Louisiana act in ques-

tion, was a nonevolutionary theory of origin that "embodies the religious belief that a supernatural creator was responsible for the creation of humankind."

placed on Webster's teaching, he has no basis for his complaint and it must fail. *Webster v. New Lenox School Dist.*, Mem. op. at 4–5, 1989 WL 58209 (N.D.Ill. May 25, 1989). Accordingly, the district court dismissed the complaint.[2]

## II

### ANALYSIS

At the outset, we note that a narrow issue confronts us: Mr. Webster asserts that he has a first amendment right to determine the curriculum content of his junior high school class. He does not, however, contest the general authority of the school board, acting through its executive agent, the superintendent, to set the curriculum.

This case does not present a novel issue. We have already confirmed the right of those authorities charged by state law with curriculum development to require the obedience of subordinate employees, including the classroom teacher. Judge Wood expressed the controlling principle succinctly in *Palmer v. Board of Educ.*, 603 F.2d 1271, 1274 (7th Cir.1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980), when he wrote:

> Parents have a vital interest in what their children are taught. Their representatives have in general prescribed a curriculum. There is a compelling state interest in the choice and adherence to a suitable curriculum for the benefit of our young citizens and society. It cannot be left to individual teachers to teach what they please.

Yet Mr. Webster, in effect, argues that the school board must permit him to teach what he pleases. The first amendment is "not a teacher license for uncontrolled expression at variance with established curricular content." *Id.* at 1273. *See also Clark v. Holmes*, 474 F.2d 928 (7th Cir.) (holding that individual teacher has no con-

stitutional prerogative to override the judgment of his superiors as to proper course content), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973). Clearly, the school board had the authority and the responsibility to ensure that Mr. Webster did not stray from the established curriculum by injecting religious advocacy into the classroom. "Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family." *Edwards v. Aguillard*, 482 U.S. 578, 584, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987).

A junior high school student's immature stage of intellectual development imposes a heightened responsibility upon the school board to control the curriculum. *See Zykan v. Warsaw Community School Corp.*, 631 F.2d 1300, 1304 (7th Cir.1980). We have noted that secondary school teachers occupy a unique position for influencing secondary school students, thus creating a concomitant power in school authorities to choose the teachers and regulate their pedagogical methods. *Id.* "The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure." *Edwards*, 482 U.S. at 584, 107 S.Ct. at 2578 (footnote omitted).

It is true that the discretion lodged in school boards is not completely unfettered. For example, school boards may not fire teachers for random classroom comments. *Zykan*, 631 F.2d at 1305. Moreover, school boards may not require instruction in a religiously inspired dogma to the exclusion of other points of view. *Epperson v. Arkansas*, 393 U.S. 97, 106, 89 S.Ct. 266, 271, 21 L.Ed.2d 228 (1968). This complaint contains no allegation that school authorities

---

**2.** The district court also addressed the claims of another plaintiff, Matthew Dunne. Mr. Dunne was apparently a student in Mr. Webster's social studies class. The district court determined that Mr. Dunne failed to state a cognizable first amendment claim because his desire to obtain information about creation science was outweighed by the school district's compelling interest in avoiding establishment clause violations and in protecting the first amendment rights of other students. Mr. Dunne is not a party to this appeal.

have imposed "a pall of orthodoxy" on the offerings of the entire public school curriculum, *Keyishian v. Board of Regents*, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967), "which might either implicate the state in the propagation of an identifiable religious creed or otherwise impair permanently the student's ability to investigate matters that arise in the natural course of intellectual inquiry." *Zykan*, 631 F.2d at 1306. Therefore, this case does not present the issue of whether, or under what circumstances, a school board may completely eliminate material from the curriculum. *Cf. Zykan*, 631 F.2d at 1305–06 (school may not flatly prohibit teachers from mentioning relevant material). Rather, the principle that an individual teacher has no right to ignore the directives of duly appointed education authorities is dispositive of this case. Today, we decide only that, given the allegations of the complaint, the school board has successfully navigated the narrow channel between impairing intellectual inquiry and propagating a religious creed.

Here, the superintendent concluded that the subject matter taught by Mr. Webster created serious establishment clause concerns. *Cf. Edwards*, 482 U.S. at 583–84, 107 S.Ct. at 2577 ("The Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools."); *Epperson*, 393 U.S. at 106, 89 S.Ct. at 271 (school may not adopt programs that aid or oppose any religion). As the district court noted, the superintendent's letter is directed to this concern. "[E]ducators do not offend the First Amendment ... so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988). Given the school board's important pedagogical interest in establishing the curriculum and legitimate concern with possible establishment clause violations, the school board's prohibition on the teaching of creation science to junior high students was appropriate. *See Palmer v. Board of Educ.*, 603 F.2d 1271, 1274 (7th Cir.1979) (school board has "compelling" interest in setting the curriculum). Accordingly, the district court properly dismissed Mr. Webster's complaint.

Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.