John E. PELOZA, Plaintiff,

v.

CAPISTRANO UNIFIED SCHOOL DISTRICT, et al., Defendants.

No. CV 91–5268–DWW (Bx).

United States District Court, C.D. California.

Jan. 16, 1992.

Cyrus Zal, Fullerton, Cal., for plaintiff.

Rutan & Tucker by David C. Larsen, Costa Mesa, Cal., for defendants.

## MEMORANDUM

DAVID W. WILLIAMS, Senior District Judge.

This memorandum revisits the long-standing debate between scientists and fundamentalists about human origins—the theories of evolution v. creationism. The Darwinian theory that humans are derived from lower life forms vs. the Christian concept in the opening Chapters of the Book of Genesis that

(1) "In the beginning God created the heaven and the earth.

(2) And the earth was without form, and void; and darkness was upon the face of the deep."

## JURISDICTION

Plaintiff alleges violations of federal law, particularly the First, Fifth and Fourteenth Amendments to the United States Constitution and also 42 U.S.C. §§ 1981, 1983, 1985(3), 28 U.S.C. § 1343 and the Doctrine of Pendent Jurisdiction.

## FACTUAL BACKGROUND

John E. Peloza is a biology teacher in a public high school in the Capistrano Unified School District and he has brought this action for declaratory and injunctive relief

and for damages arising out of his contention that he has the constitutional right to teach his students pursuant to his belief in the system of creationism, as expounded in Genesis. Adversely the school system contends that his biology classes should be taught pursuant to an accepted theory of evolution which is defined within the framework of the California Education Code. Pursuant to the code, each school district is required to establish local curriculum for grades 7 through 12. Such a curriculum must include the biological sciences as well as other standard subjects. The curriculum sets forth the subjects that must be covered in the high school biology class. The school district must maintain uniformity so that all students are adequately prepared for college entrance exams and higher education. In the biology curriculum, evolution is one of the main themes to be covered. It is taught throughout two years of science study in the district curriculum.

In his complaint, plaintiff contends that the school district's requirement that he teach the evolution theory is a violation of his constitutional rights because evolution is a religious theory. He cites the Establishment Clause of the First Amendment to the United States Constitution as forbidding "the establishment of a religion." It is his argument that the school district commands him to teach evolution as a *fact* rather than as a theory. Plaintiff takes the position that forcing him to teach the religious belief of evolution as a valid scientific theory would force him to become an unwilling agent of the school district in the establishment of the religion of secular humanism,[1] in violation of the First Amendment. Peloza claims a First Amendment right to freedom of speech and freedom to teach the truth in the classroom and to teach science.

Peloza further charges the defendants with conspiracy to deny his First, Fifth and Fourteenth Amendment rights and to destroy his professional reputation and career as a public high school teacher. He contends that the defendants, by reason of issuing letters of reprimand to him, are preparing to seek his dismissal as a public high school teacher. He does not claim that he has been dismissed and in fact he is still pursuing his career in this high school.

Finally, he complains that even if he is not permitted to teach his theory of creationism in the classroom, he should be permitted to privately discuss religion and his theory of creationism in conversations with students during private, non-instructional time on the campus, during lunch, class breaks, and before and after school hours.

The party defendants include the Capistrano Unified School District and its Board of Trustees of the School District, and the Principal, Vice–Principal and certain teachers at the high school.

## CONTENTIONS OF DEFENDANTS

Defendants ask the Court to take judicial notice of lodged certified copies of the following:

1. The State of California Office of Curriculum Framework and Textbook Development's Instructional Materials and Framework Adoption: Policies and Procedures.

2. California Department of Education's Science Framework for California Public Schools Kindergarten Through Grade Twelve.

It is appropriate that such public documents be judicially noticed. *Massachusetts v. Westcott,* 431 U.S. 322, 97 S.Ct. 1755, 52 L.Ed.2d 349 (1977).

---

1. Plaintiff enclosed literature depicting creationism as the accurate explanation of the origin of life while debunking the doctrine of secular humanism. Secular humanism is the name many academics have tagged to the teaching that man is the center and each person controls his own destiny. Evolution is included among the subjects upon which secular humanism is based. Peloza argues that since a minority of

Christians now recognize secular humanism as a religion, it follows that the doctrine of evolution is also a religion. However, evolutionism is the widely accepted scientific explanation of the origin of life. This is the explanation accepted by the nation's school districts in forming their curricula for the sciences. Defendant school district bases its biological science curriculum on the evolutionist theory.

Defendants contend that the Capistrano Valley High School is part of the Capistrano Unified School District ("District") and that the District in turn is a creation of the legislature of the State of California, and is governed by the California Education Code. Cal.Educ.Code § 35000, *et seq.* That pursuant to the statutory scheme set forth in that Code, every school district is required to establish a local curriculum for grades 7 through 12. Cal.Educ.Code § 51054. That curriculum must include the biological sciences and must conform to minimum curriculum standards for California. Cal. Educ.Code § 51220(e).

The defendants further claim that the State Department of Education has the responsibility of developing a curriculum framework which is formulated by educators with expertise in the area of curriculum following public debate and input. Each local district has the responsibility of either implementing or modifying the state curriculum for its own particular needs (§ 51054).

### CURRICULUM OF THE CAPISTRANO UNIFIED SCHOOL DISTRICT

In this case, the curriculum framework for science was revised and approved by the State Board of Education in 1989 after a public hearing. The district follows this framework for its biology courses.

Within this framework, the principle of evolution is listed as one of the major themes of science. The framework states: "In order to teach life science, earth science or astronomy, evolution should be a fundamental, central concept of the curriculum." The defendants further contend that this concept of evolution as taught in the high school classes today is not the simple, traditional Darwinism theory of man's evolution from lower life forms, but encompasses changes in animal life, plants, geologic and astronomic processes. The defendants further claim that the framework notes that the question of "creation science" was "thoroughly studied by leading scientific societies, and rejected as not qualifying as a scientific explanation."

### PLAINTIFF WOULD NOT TEACH THE PRESCRIBED CURRICULUM

The defendants further charge that Peloza chooses to ignore the accepted framework for biology classes and to insist upon using his own religious preference in teaching the theory of creationism to his students. Based upon this conflict, there has resulted considerable controversy between the teacher and the school officials resulting in the defendants causing a continuum of monitoring of plaintiff's classes in order to make a determination of the content of his lectures to students. This resulted in defendant Thomas R. Anthony on February 7, 1991 issuing a formal written reprimand to plaintiff accusing him of teaching religion in the classroom. This reprimand incorporated in a letter dated October 11, 1990 from defendant Ross Velderraine to plaintiff. The 1991 letter from defendant Anthony issued a formal written warning to plaintiff in which it was stated:

"You are hereby directed to refrain from any discussion of religion in any of your science classes and to refrain from attempting to influence your students to accept your own personal religious or philosophical beliefs. You are directed to follow the court outlines in the subject area of high school Biology and more specifically in the teaching of evolution. You are further directed to refrain from making any comments about Jesus Christ, about the fact that people who do not believe in Jesus Christ burn in hell, and to refrain from discussing religion or quoting from the Bible during any of your classes. If a student does ask you a question about religion, you are directed to refer them to their parents or to their own clergy person for guidance. You are further directed to teach evolution as a valid scientific theory and to refrain from any teaching of creationism as a valid scientific theory."

\* \* \* \* \* \*

At the outset it should be understood that my task in this memorandum is not to decide whether the teaching of evolution in the defendant's schools is or is not of itself a violation of the Establishment Clause in

the First Amendment of the Constitution. No one has raised this as an issue in this case. The plaintiff in his argument has conceded that this might be a separate issue in another case. Simply put, the issue I must decide is whether Peloza has a constitutional right to conduct himself as a loose cannon in his classroom or on the campus and teach scientific theories of his own choosing despite the fact that they are not authorized by and are prohibited by the State Board of Education curriculum. I conclude that he has not.

In *McLean v. Arkansas Bd. of Education,* 529 F.Supp. 1255 (E.D.Ark.1982), the court held that teaching creationism is in fact teaching a religion. This undermines plaintiff's notion that he has a constitutional right to teach it because it *is* religion. It also debunks his idea that he can teach creationism as a part of academic freedom. In *Webster v. New Lenox School Dist. No. 122,* 917 F.2d 1004 (7th Cir.1990), the court was faced with a teacher who sought to vary the curriculum by teaching creationism to his junior high school social studies students. In ruling that the school board sets the curriculum and that the plaintiff must follow it, the *Webster* court stated as follows:

> "There is a compelling state interest in the choice and adherence to a suitable curriculum for the benefit of our young citizens and society. It cannot be left to individual teachers to teach what they please."... The First Amendment is "not a teacher license for uncontrolled expression at variance with established curricular content."

*Id.* at 1007, quoting from *Palmer v. Board of Educ.,* 603 F.2d 1271, 1273–1274 (7th Cir.1979), *cert. den.* 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980).

### DISCUSSION

Plaintiff has stated in his complaint and opposition papers that he does not want to teach creationism. He claims that he only wants to teach science. The problem with his request is that there must be a foundation on which to build. The theory of evolution provides such a foundation. Plaintiff has not comported himself in the man-

ner of one who only wants to teach science. In the classroom he has stated more than once that he is a creationist and does not believe in the theory of evolution. Additionally, plaintiff has had various conversations with members of his class espousing his Christian views.

### I. SCHOOL DISTRICT HAS NOT VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS

#### A. Teachers do not have a Constitutional Right to Teach or not Teach Certain Subjects Based on their Personal Views

The California Education Code establishes that the state gives a broad outline of what should be covered in secondary education and the local districts take those guidelines and develop a curriculum that would best serve the needs of the pupils in their respective areas. Cal.Educ.Code § 51000 et. seq.

 There is a compelling state interest for secondary school teachers to adhere to the curriculum set forth by the appropriate school district. *Palmer v. Board of Ed. of City of Chicago,* 603 F.2d 1271 (7th Cir.1979), *cert. den.* 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). Encompassed in that interest, teachers must adhere to the provided curriculum regardless of their own religious views and practices. *Id.* at 1274.

In *Palmer* the plaintiff, a probationary kindergarten teacher, was a member of the Jehovah's Witnesses religion. Before the beginning of classes the teacher informed the principal that because of her religious beliefs she would not be able to teach any subject that had to do with love of country, the flag or other patriotic matters. *Id.* at 1272. The court held that the teacher had no constitutional right to require students to submit to her views and to "forego a portion of their education they would otherwise be entitled to enjoy." *Id.* at 1274.

In *Webster v. New Lenox School Dist. No. 122,* 917 F.2d 1004 (7th Cir.1990) the plaintiff was a social studies teacher in

Illinois. A student of Mr. Webster complained that the plaintiff was teaching religion in his class. Plaintiff claimed that he was teaching non-evolutionary theories of creation, and that such theories do not violate the doctrine of separation of church and state. The district court held that plaintiff did not have a right to teach creation science in a public school. *Id.* at 1006. The lower court stated that a "school board generally has wide latitude in setting the curriculum, provided the school board remains within the boundaries established by the constitution." *Id.* The Seventh Circuit affirmed, holding that an individual teacher does not have the right to ignore the curriculum compiled by education authorities. *Id.* at 1008.

■ The Supreme Court has recognized that a secondary school teacher serves as a "role model for his students, exerting a subtle but important influence over their perceptions and values." *Ambach v. Norwick,* 441 U.S. 68, 78–79, 99 S.Ct. 1589, 1595, 60 L.Ed.2d 49 (1979). Secondary school students are at a stage of development where they are open to many ideas. However, their intellectual development imposes more responsibility on the local school board to control the curriculum, choose the teachers and regulate their pedagogical methods. *Zykan v. Warsaw Community School Corp.,* 631 F.2d 1300, 1304 (7th Cir.1980). "Students in such institutions are impressionable and their attendance is involuntary." *Edwards v. Aguillard,* 482 U.S. 578, 584, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987).

The rigid requirements set forth in the Cal.Educ.Code are to insure that high school students receive a well-balanced and thorough course of study. If every teacher chose to teach the areas he or she personally believed in and omitted those topics which are different from beliefs they hold, a curriculum compiled by the state and the local district would be useless.

In *Bishop v. Aronov,* 926 F.2d 1066 (11th Cir.1991) *cert. denied, granted sub nom., Bishop v. Delchamps,* — U.S. ——, 112 S.Ct. 294, 116 L.Ed.2d 238 (1991), the Eleventh Circuit stated that at the university level, those responsible for preparing the curriculum for public education have the right to prohibit a professor from including his religious viewpoints as part of his science curriculum. The court in *Bishop* refrained from reaching the Establishment Clause questions that were raised. The court stated that "by its effort to avoid endorsement of [plaintiff's] religious ideas in its classrooms" the university's reprimand of plaintiff espousing his religious ideas in the classroom "does not create an establishment of religion." *Id.* at 1078. The *Bishop* court held "that the University's restrictions with respect to classroom conduct issued under its authority to control curriculum do not infringe the free speech or free exercise rights of Dr. Bishop." *Id.*

It is well known that institutions of higher education allow their instructors more latitude in choosing their subject matter. University students are more mature and are therefore better able to separate opinion from fact and infuse their own personal beliefs into a given framework. However, the Eleventh Circuit has stated that even on the university level the officials responsible for formulating the curriculum may control what a professor teaches without violating the professor's first amendment right to free speech.

### B. Plaintiff's Claim that Evolution is a Religion is Unsupported

■ Plaintiff has stated that he will not teach evolution because it is a religion and therefore in violation of the establishment clause of the first amendment.

"It is clearly established in the case law, and perhaps also in common sense, that evolution is not a religion and that teaching evolution does not violate the Establishment clause." *McLean v. Arkansas Bd. of Ed.,* 529 F.Supp. 1255, 1274 (E.D.Ark.1982). *See Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Willoughby v. Stever,* No. 15574–75 (D.D.C. May 18, 1973); aff'd D.C.Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Wright v. Houston Indep. School Dist.,* 366 F.Supp. 1208 (S.D.Tex.1978),

aff'd 486 F.2d 137 (5th Cir.1973), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974).

The Supreme Court has recognized that "the term 'religion' has reference to one's view of his relation to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will." *Davis v. Beason,* 133 U.S. 333, 342, 10 S.Ct. 299, 300, 33 L.Ed. 637 (1890), quoted in *Wright* at 1210, n. 5.

In *Wright* the court stated:

Plaintiff's case depends in large measure upon their demonstrating a connection between "religion" as employed in the first amendment, and defendant's approach to the subject of evolution. The Court is convinced that the connection is too tenuous a thread on which to base a first amendment complaint.

*Id.* at 1210.

C. The Curriculum in Biology is not a Violation of the Establishment Clause

In case at issue plaintiff states that following the curriculum would be a violation of the establishment clause. In *Edwards,* the Court stated that it has "been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Id.* 482 U.S. at 583–84, 107 S.Ct. at 2577. "Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family." *Id.* at 584, 107 S.Ct. at 2577.

Since the evolutionist theory is not a religion, to require an instructor to teach this theory is not a violation of the Establishment Clause. Creationism is associated with "a particular interpretation of the Book of Genesis by a particular religious group." *Epperson v. Arkansas,* 393 U.S. 97, 103, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). "The ideas of [creationism] are not merely similar to the literal interpretation of Genesis; they are identical and parallel to no other story of creation." *McLean v. Arkansas Bd. of Education,* 529 F.Supp. 1255, 1265 (E.D.Ark.1982). "The idea of

sudden creation from nothing, or creation ex nihilo, is an inherently religious concept." *Id.* at 1266.

Evolution is a scientific theory based on the gathering and studying of data, and modification on new data. It is an established scientific theory which is used as the basis for many areas of science. As scientific methods advance and become more accurate, the scientific community will revise the accepted theory to a more accurate explanation of life's origins.

Plaintiff's assertions that the teaching of evolution would be a violation of the Establishment Clause is unfounded.

D. The School District has not Violated Plaintiff's Right to Free Speech

In *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), the Supreme Court examined the extent of a public employee's first amendment rights to free speech. In *Rankin,* the Court used a balancing test to determine whether a public employee's speech is protected under the first amendment. The test used is "a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the state, an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 384, 107 S.Ct. at 2896–97, quoting *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

In the case at issue the school district as the employer has a compelling interest to teach the students within the district the basic materials needed to become contributing citizens. Additionally, as the *public* employer, the school board does not want to infringe upon the religious beliefs held by individual students and their families. Because of the continuous controversy in the area of religion in schools, plaintiff's statements about evolution and his outward bias toward the creationist view and the Christian religion, may be identified as public concerns. While the school district is not attempting to chill plaintiff's speech, it does have a strong interest in maintaining its secular purpose of educating high school students.

Under the framework set forth in *Rankin,* the interests and concerns of the school district overrule plaintiff's claimed right to free speech.

 "In public education, individual's right to free speech is not absolute. It may be limited if exercise of that right materially interferes with the rights of others." *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 513, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). "The Supreme Court has never held that a teacher has a constitutional right to teach what he sees fit, not to pre-empt parents' decisions regarding what courses their children should take." *Mercer v. Michigan State Bd. of Education,* 379 F.Supp. 580, 586 (E.D.Mich.1974), aff'd mem., 419 U.S. 1081, 95 S.Ct. 673, 42 L.Ed.2d 678 (1974).

The plaintiff's right to free speech must be balanced "against his student's right to be free of religious influence or indoctrination in the classroom." *Roberts v. Madigan,* 702 F.Supp. 1505 (D.Colo.1989), aff'd 921 F.2d 1047 (10th Cir.1990). *See Board of Education, Island Trees Union Free School District No. 26, et al. v. Pico,* 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982). Here, the balance seems to lie in the students' favor. The high school students at Capistrano High School have a right to be taught biology without the added comments and religious biases of plaintiff. As shown in defendants motion papers some students have already been effected by plaintiff's teachings. Parents have complained of frustration with the differences between the religious beliefs taught at home and the beliefs of the plaintiff.

Defendants have notified plaintiff that he is not to engage in discourse with students regarding his personal religious beliefs. If a student approaches him with a question about religion, plaintiff is correctly, instructed to refer the student to his or her parents or clergy. This instruction is not a violation of the plaintiff's first amendment right to free speech, but rather a directive to insure that religious dogma is not taught in the public school.

Peloza seeks permission of this Court to speak privately to students on campus during lunch hours and class breaks so that he may preach to them his creativism views. He looks upon this as a First Amendment right. I don't see this as an instance of students clamoring to him as a Pied Piper to seek the blessings of his pronouncements. Rather it appears that he desires to do a job of proselytizing pupils in his classroom to swell the numbers of those who will follow him to his lecture during lunch hours or class breaks so he may expound his views to them out of the classroom and thus avoid the accusation of disseminating them while off the school payroll.

DEFERENCE

SCHOOL DISTRICT'S PROHIBITION OF PLAINTIFF DISCUSSING CHRISTIAN BELIEFS OUTSIDE OF THE CLASSROOM IS NOT A VIOLATION OF HIS CONSTITUTIONAL RIGHTS

 States and School Boards are generally afforded considerable discretion in operating public schools. *Dist. No. 403 v. Fraser,* 478 U.S. 675, 683, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986). Yet their discretion must be exercised in a manner that comports with the transcendent imperatives of the First Amendment. *Board of Education v. Pico,* 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). *See also Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); *Jordan v. Gardner,* 953 F.2d 1137 (9th Cir.1992); 47 Ohio State Law Journal 354 (1986).

Under the California Code an "instructional day" includes the hours before and after school, lunch and class breaks. 5 Cal.Code of Regulations § 5552; Cal.Educ. Code § 44807. *See Johnson v. Huntington Beach Union High School District,* 68 Cal.App.3d 1, 137 Cal.Rptr. 43 (1977). During these times a teacher is not permitted to discuss religious views with students. In the Equal Access Act, the United States Congress has determined that even though students may meet among themselves, teacher may not become involved in the student discussions. 20 U.S.C. § 4071(c). *See Westside Community Schools v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 110

L.Ed.2d 191 (1990). I follow this precedent to conclude against plaintiff's right to go through the back door when the front door is closed to him.

The district is correct in prohibiting plaintiff from having any religious discussions during the "hours of instruction."

## II. PLAINTIFF CLAIMS DUE PROCESS VIOLATIONS VIA THE FIFTH AND THE FOURTEENTH AMENDMENTS

### A. No Violation of any Property Interest

■ A complainant may allege that he has been deprived of a property right if he can prove that his legal rights or status have been removed or significantly altered. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In the case at issue plaintiff has not lost a property right. He has received reprimands from his superiors but he has not lost his job. Plaintiff does not have a claim as to a loss of property rights.

### B. Plaintiff has not Been Deprived of any Liberty Interest

■ In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Court stated that if the state makes statements that seriously damage a person's standing and forecloses his opportunity to find other employment, adequate notice and a hearing may be necessary to clear one's name. However, statements which affect one's reputation or tortious defamation do not deprive one of a liberty interest. *Hayes v. Phoenix–Talent School Dist.*, 893 F.2d 235 (9th Cir.1990).

As defendants point out, the statements made to plaintiff and the editorials in the paper were merely comments by various people within the school and District who disagree with plaintiff's teaching methods. Plaintiff has not established a deprivation of his liberty interest.

## III. INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

Plaintiff has named a series of individual defendants who have made statements in opposition to plaintiff's teaching methods. These comments do not infringe on plain-tiff's right to teach. In fact the individuals are only exercising their first amendment right to free speech. The reprimands received by plaintiff do not violate his constitutional rights.

## IV. REMAINING CLAIMS TO BE DISMISSED

Once plaintiff's constitutional claims are dismissed, the remaining state causes of action should be dismissed for lack of jurisdiction.

## CONCLUSION

Based on the discussion above, plaintiff's constitutional claims via 42 U.S.C. § 1983 and 42 U.S.C. § 1985 are dismissed on the grounds that plaintiff has not stated a claim for which relief can be granted. Defendants' motion is to be GRANTED.